CHARLES J. MEADOWCROFT *et al.*

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

56:147  Ind 82
34 LRA 660n
36 LRA 182
37 LRA 145

*Filed at Ottawa March 28, 1896—Rehearing denied October 21, 1896.*

1. CONSTITUTIONAL LAW—*validity of act of 1879 for protection of depositors—due process of law.* The statute making the receipt of deposits by a banker, when insolvent, embezzlement, (Laws of 1879, p. 113,) is not unconstitutional, as a deprivation of liberty and property without due process of law, as the business of banking is affected with a public interest and subject to regulation within the general police power.*

2. SAME—*statute may fix what shall constitute a prima facie case of intent to defraud.* The provision of the statute (Laws of 1879, p. 113,) that the failure, suspension or involuntary liquidation of a banker within thirty days from receiving a deposit shall be *prima facie* evidence of an intent to defraud, is not unconstitutional, as a deprivation of life, liberty or property without due process of law.

3. SAME—*criminal law—no vested right in the rules of evidence.* No one has a vested right in the rules of evidence, so as to render a statute declaring the failure, suspension or involuntary liquidation of a banker within thirty days after receiving a deposit *prima facie* evidence of an intent to defraud, unconstitutional, as depriving such banker of the presumption that every man is innocent until proved guilty.

4. SAME—*validity of statute as affecting right of trial by jury.* A statute making the failure, suspension or involuntary liquidation of a banker within thirty days after receiving a deposit *prima facie* evidence of his intent to defraud, is not unconstitutional, as invading the right of trial by jury.

5. STATUTES—*how far rule of strict construction of a penal statute controls.* The rule of strict construction of a penal statute is not violated by giving its words a reasonable meaning according to the sense in which they were intended, disregarding captious objections and even the demands of exact grammatical propriety.

6. INDICTMENT—*of banker receiving deposit while insolvent—sufficiency.* An indictment against a banker for receiving a deposit while insolvent, in the terms and language of the statute, need not expressly aver the intent of the defendant, at the time of receiving the money, to defraud the depositor, especially where it charges that the act was corruptly, willfully, fraudulently and feloniously done.

*The subject of criminal liability for receiving deposits in an insolvent bank is treated in a recent note to *Commonwealth* v. *Junkin,* (Pa.) 31 L. R. A. 124.

7. SAME—*what is a sufficient averment that money was received as a deposit.*  An indictment charging the receipt by bankers of moneys of the person named, "then and there not being indebted to" such bankers, sufficiently charges that the money was received as bankers and as a general bank deposit.

8. SAME—*against banking partners—sufficiency of averment of insolvency.*  An indictment against persons doing a banking business under a firm name, for receiving a deposit while insolvent, need not charge that the partnership, as such, was insolvent, as the partnership is not a legal entity, distinct from and independent of the persons composing it.

9. CRIMINAL LAW—*effect of elapsing of several terms, after indictment, on right of defendant to discharge.*  Defendants in a criminal case are not entitled to discharge for want of prosecution because they were not tried for several terms after their indictment, where they were out on bail and never appeared in court until the term at which they were tried.

10. SAME—*verdict—when not defective as fixing a joint punishment for two defendants.*  A verdict finding two bankers guilty of embezzlement in receiving a deposit while insolvent, and fixing their punishment at a fine of twenty-eight dollars and in addition at imprisonment for one year, is not defective as fixing a joint instead of a several punishment, but imposes upon each the fine and imprisonment stated. (PHILLIPS, J., dissenting.)

11. BANKS—*simple act of taking deposit while insolvent does not complete statutory offense.*  A banker is not guilty of embezzlement, under the statute for the protection of depositors, (Laws of 1879, p. 113,) by the simple act of taking a deposit while insolvent, but, to complete the offense, such deposit, or some part of it, must, by the failure, suspension or involuntary liquidation of the banker, be lost to the depositor.

12. SAME—*that portion of a deposit which is paid out on checks is not "lost."*  That part of a deposit taken by a banker while insolvent, which such banker pays out upon the depositor's checks before failure, suspension or involuntary liquidation, is not "lost" to such depositor, within the meaning of the statute.

13. SAME—*loss of entire deposit not necessary to constitute crime.*  Loss of the entire amount of a deposit taken by a banker while insolvent is not necessary to complete the crime of embezzlement, under the act for the protection of depositors.

14. SAME—*when the crime created by the statute becomes complete.*  The crime created by the act for the protection of depositors is complete when the insolvent banker fraudulently receives the deposit, and by his failure, suspension or involuntary liquidation, by reason of insolvency, the depositor is deprived of the whole or some portion of such deposit.

15. SAME—*when tender of deposit by banker is no defense to criminal prosecution.* Tender by a banker to a depositor of the amount of his deposit at the time of the banker's trial for embezzlement in receiving such deposit while insolvent, will not relieve him from liability under the statute.

16. EVIDENCE—*deposit of money is presumed to be general unless shown to be special.* A deposit of money with bankers at their banking house is presumed to be general unless it appears that the depositor makes it special, or deposits it in some particular capacity.

17. SAME—*what proof supplies want of formal demand by depositor.* Proof of a demand for the deposit is not essential to conviction of a banker under the statute of 1879, where it is shown that such banker suspended payment and closed his doors against depositors and creditors and discontinued banking operations.

18. APPEALS AND ERRORS—*when omission of a jury to find fact will not reverse.* Failure of a verdict against a banker, under the act of 1879, for receiving a deposit when insolvent, to state the value or amount of the deposit, is not cause for reversal where the fine fixed by the jury is much less than it should have been under the evidence and the law. (PHILLIPS, J., dissenting.)

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding.

WALKER & EDDY, (LORIN C. COLLINS, Jr., and GEO. S. HOUSE, of counsel,) for plaintiffs in error:

In *Millett* v. *People,* 117 Ill. 294, this court discusses what is due process of law, and on like principle is *People* v. *Marx,* 99 N. Y. 377. This court has also held certain class legislation unconstitutional in the following cases: *Ramsey* v. *People,* 142 Ill. 380; *Frorer* v. *People,* 141 id. 171; *Braceville Coal Co.* v. *People,* 147 id. 66. See, also, Story on the Constitution, sec. 1944.

Section 18 of division 13 of the Criminal Code is peremptory in its terms. It provides for the absolute discharge for want of prosecution if any person shall have been admitted to bail for a criminal offense and more than three whole terms shall have elapsed without trial. There is nothing in the language of the statute which requires any act upon the part of the accused. *Gallagher* v. *People,* 88 Ill. 335; *Ochs* v. *People,* 124 id. 399; *Dougherty* v. *People,* id. 557; *People* v. *Matson,* 129 id. 591.

Reputation is not admissible to prove insolvency, but facts must be shown from which insolvency is inferred. The insolvency of a person at a particular time cannot be proved by general reputation or by hearsay evidence. *Lawson* v. *Orear,* 7 Ala. 785; *Bank* v. *Parker,* 5 id. 731; *Graff* v. *Brown,* 85 Ill. 89; *Pollard* v. *People,* 69 id. 148.

The depositor must make a demand for the return of his deposit before he can bring a suit, and an action does not amount to a demand. Morse on Banks, (3d ed.) sec. 289; *Bank* v. *Bailey,* 12 Blatchf. 480; *Payne* v. *Gardiner,* 29 N. Y. 146.

Until there has been a demand, or until some act of the depositor or some act of the bank made known to the depositor has dispensed with such demand and refusal, the statute ought not to begin to run, nor should any presumption of payment be allowed to arise. (Morse on Banks, sec. 322.) This proposition is sustained by *Bank* v. *Rushmore,* 28 Ill. 463, and *Brahm* v. *Adkins,* 77 id. 263.

Where full tender is made and the amount paid into court it discharges the debt. *Shiver* v. *Johnston,* 62 Ala. 37; *Haeussler* v. *Duross,* 14 Mo. App. 103; 25 Am. & Eng. Ency. of Law, 938; *Bank* v. *Sutherland,* 3 Cow. 336.

The payment of money into court is an admission of indebtedness to the extent of the amount paid in, and whatever may be the result of the trial the money so paid in belongs to the plaintiff, and the party bringing it into court loses all right to it. 25 Am. & Eng. Ency. of Law, 943, and cases cited.

The money paid in is a payment upon the claim of plaintiff, and cannot be withdrawn by the defendant. *Call* v. *Lothrop,* 39 Me. 434; *Gilpatrick* v. *Ricker,* 82 id. 185; *Reed* v. *Armstrong,* 18 Ind. 446; *Hopkins* v. *Stephenson,* 1 J. J. Marsh. 341; *Morrow* v. *Smith,* 4 B. Mon. 99; *Murray* v. *Bethune,* 1 Wend. 191.

A partnership or joint stock company is just as distinct and palpable an entity in the eye of the law, as distinguished from the individuals composing it, as is a

corporation, and can contract as an individualized party with one of its members as effectually as a corporation with one of its stockholders.     *Walker* v. *Wait*, 50 Vt. 668; *Hosmer* v. *Burke*, 26 Iowa, 353; *Chaffee* v. *Jones*, 19 Pick. 260; *Brocken* v. *Ellsworth*, 64 Ga. 243; *Henry* v. *Anderson*, 77 Ind. 361; *Fitzgerald* v. *Grimmell*, 64 Iowa, 261; *Cross* v. *Bank*, 17 Kan. 336; *Robertson* v. *Corsett*, 39 Mich. 777; *Roop* v. *Herron*, 15 Neb. 73; *Faulkner* v. *Whittaker*, 15 N. J. L. 438; *Meily* v. *Ward*, 71 Pa. St. 488; *Peck* v. *Barnum*, 24 Vt. 75.

Wherever the punishment depends upon the value of the article stolen or embezzled the jury must find that value, and a general verdict is bad and will not support a conviction.     *Highland* v. *People*, 1 Scam. 392; *Sawyer* v. *People*, 3 Gilm. 53; *Hildreth* v. *People*, 32 Ill. 36; *Thompson* v. *People*, 125 id. 256; *Collins* v. *People*, 39 id. 233; *Ray* v. *State*, 1 Greene, (Iowa,) 316; *State* v. *Redman*, 17 Iowa, 329; *Miles* v. *State*, 3 Texas App. 58.

This is clearly a joint verdict, and is fatally defective under the authorities.     *Miller* v. *People*, 47 Ill. App. 472; 1 Bishop on Crim. Law, sec. 954; 1 Bishop on Crim. Proc. (3d ed.) sec. 1036; *Allen* v. *State*, 34 Texas, 230; *Hampton* v. *State*, 45 id. 154; *Flynn* v. *State*, 8 Texas App. 398; *State* v. *Gay*, 10 Mo. 440; *Strangham* v. *State*, 16 Ark. 37; *Cunningham* v. *State*, 26 Texas App. 83; *Medis* v. *State*, 27 id. 194; *Hayes* v. *State*, 30 id. 452; *Commonwealth* v. *Harris*, 7 Gratt. 600; *Caldwell* v. *Commonwealth*, 7 Dana, 229; *Curd* v. *Commonwealth*, 14 B. Mon. 386; *Queen* v. *Littlechild*, L. R. 5 Q. B. 293; *Godfrey's case*, 11 Coke, 43; *King* v. *Sterling*, 11 Levinz, 125; *Jones* v. *Commonwealth*, 1 Call, 555; *State* v. *Hunter*, 33 Iowa, 361; *McLean* v. *State*, 35 Ala. 395; *Walsen* v. *State*, 3 Wis. 785; *Commonwealth* v. *Ray*, 1 Va. 262.

The intent with which an act is done is often made an ingredient in the offense, as defined either by common law or by statute; and when it is so, care must be taken to state in the indictment that the offense was committed with that intent, otherwise the indictment will be bad. 1 Archbold on Crim. Pl. and Pr. 273; *Beatty* v. *State*, 82

Ind. 228 ; *People* v. *Galland*, 55 Mich. 628 ; *People* v. *Hurst*, 62 id. 277; *Mormon* v. *State*, 24 Miss. 54.

Where a particular intent is essential to constitute a crime that intent must be distinctly alleged in the indictment. *State* v. *Grow*, 34 N. H. 510.

M. T. MOLONEY, Attorney General, (M. L. RAFTREE, T. J. SCOFIELD and M. L. NEWELL, of counsel,) for the People:

That the statute is valid we cite the following authorities: *Bank* v. *Gueder, etc. Manf. Co.* 150 Ill. 336; *Murphy* v. *People*, 19 Ill. App. 125; *State* v. *Buck*, 120 Mo. 479; *Commissioners* v. *Merchant*, 103 N. Y. 143; *Baker* v. *State*, 54 Wis. 368 ; *Thorpe* v. *Railroad Co.* 27 Vt. 149; *Live Stock Ass.* v. *Crescent City, etc. Co.* 1 Abb. 398; *Slaughter House cases*, 16 Wall. 36; *Bartemeyer* v. *Iowa*, 18 id. 129; *Bradwell* v. *State*, 16 id. 130; *New York* v. *Miln*, 11 Pet. 102; *United States* v. *DeWitt*, 9 Wall. 41; *Fry* v. *State*, 63 Ind. 552; *Ex parte Smith and Keating*, 38 Cal. 702; *People* v. *Harper*, 91 Ill. 357; *State* v. *Conlin*, 27 Vt. 318; *In re Dougherty*, id. 325; *Austin* v. *State*, 10 Mo. 591 ; *Intoxicating Liquor cases*, 25 Kan. 751 ; *In re Ruth*, 32 Iowa, 250; *Harrigan* v. *C. R. L. Co.* 129 Mass. 580; *Carter* v. *Dow*, 16 Wis. 298; *Tennty* v. *Lenz*, id. 566; *Milwaukee* v. *Gross*, 21 id. 241; *State* v. *Ludington*, 33 id. 107; *Taylor* v. *State*, 35 id. 298; *Morrill* v. *State*, 38 id. 428; *Van Buren* v. *Downing*, 41 id. 122 ; *Milwaukee I. S.* v. *Milwaukee County*, 40 id. 328; *Cincinnati* v. *Bryson*, 15 Ohio, 625; *Cincinnati* v. *Buckingham*, 10 id. 257; *Ash* v. *People*, 11 Mich. 347; *Boston* v. *Shaffer*, 9 Pick. 415; *Kitson* v. *Ann Arbor*, 26 Mich. 325; *Baker* v. *Cincinnati*, 11 Ohio St. 534; *Van Baalen* v. *People*, 40 Mich. 258; *State* v. *Hartfield*, 24 Wis. 60.

Upon the question of insolvency see *In re Hutchison*, 147 Pa. St. 140; *State* v. *Buck*, 108 Mo. 622, and 120 id. 479; *State* v. *Cadwell*, 79 Iowa, 432; *Railroad Co.* v. *Johnson*, 133 U. S. 566; *Murphy* v. *People*, 19 Ill. App. 125.

Evidence that a debtor, when called upon to pay his notes when due, replied he was unable to do so,—that he

tried to raise money but could not,—warranted a finding
of insolvency.   *Railroad Co.* v. *Johnson,* 133 U. S. 577.

Mr. JUSTICE BAKER delivered the opinion of the court:

The indictment upon which Charles J. Meadowcroft
and Frank R. Meadowcroft, the plaintiffs in error, were
convicted, was based upon the first section of "An act for
the protection of bank depositors," approved June 4, 1879.
Said section is as follows:

"*Be it enacted by the People of the State of Illinois, represented
in the General Assembly,* That if any banker or broker or
person or persons doing a banking business, or any officer
of any banking company or incorporated bank doing bus-
iness in this State, shall receive from any person or per-
sons, firm, company or corporation, or from any agent
thereof, not indebted to said banker, broker, banking
company or incorporated bank, any money, check, draft,
bill of exchange, stocks, bonds or other valuable thing
which is transferable by delivery, when, at the time of
receiving such deposit, said banker, broker, banking com-
pany or incorporated bank is insolvent, whereby the de-
posit so made shall be lost to the depositor, said banker,
broker or officer so receiving said deposit shall be deemed
guilty of embezzlement, and upon conviction thereof shall
be fined in a sum double the amount of the sum so embez-
zled and fraudulently taken, and in addition thereto may
be imprisoned in the State penitentiary not less than one
nor more than three years.   The failure, suspension or
involuntary liquidation of the banker, broker, banking
company or incorporated bank within thirty days from
and after the time of receiving such deposit shall be
*prima facie* evidence of an intent to defraud, on the part
of such banker, broker or officer of such banking company
or incorporated bank."

The validity of this section of the statute is challenged
on several grounds.   It is urged that it is in derogation
of that provision of our constitution which declares that

"no person shall be deprived of life, liberty or property without due process of law," (Const. 1870, art. 2, sec. 2,) and that the case is controlled by the decisions of this court in *Millett* v. *People*, 117 Ill. 294, *Frorer* v. *People*, 141 id. 171, *Ramsey* v. *People*, 142 id. 380, and *Braceville Coal Co.* v. *People*, 147 id. 66.    The contention is, that every person living under the protection of our State government has the right to be engaged in the prosecution of any one of the ordinary and common callings or business pursuits that is innocent in itself and has been followed from time immemorial, on the same terms that govern those engaged in other ordinary and common callings or business pursuits of life, and as incident thereto has the right to make the same contracts relative thereto as those engaged in such other ordinary and common callings or business pursuits are allowed to make; that the business of private banking is an ordinary and common industrial pursuit, like merchandizing, manufacturing, mining and very many other occupations of life, and is open to any one who may choose to embark in it; that one of the ordinary incidents and inherent elements of the business of a private banker is the receiving of deposits from his customer, and the relation of the banker to his depositor is the ordinary contract relation of debtor and creditor, the moneys deposited becoming the property of the banker, and not trust funds; that every person in this State, other than a private banker, engaged in the ordinary and common callings of life, is allowed to enter into contracts the result of which is to establish for himself the relation of debtor to every other person in the community who may deal with him, and that to deny to the private banker the right to prosecute his business, and, as incident thereto, to contract in regard to the same on the like terms as other ordinary and common callings or business pursuits are transacted, is to deprive him of both liberty and property, to the extent that he is thus denied the right to contract, without due process of law.

The fundamental error in the contention thus formulated is the assumption that the business of banking stands upon exactly the same footing that the ordinary industrial pursuits of farming, merchandising, manufacturing and mining, and the many other common occupations of life, stand upon. The business of a banker is not *juris privati* only, but, like that of an inn-keeper or common carrier, is affected with a public interest, and therefore subject to public regulation. At common law the business of banking is open to all, and may be followed by the citizen at pleasure, unless forbidden by legislative enactment. The right, however, to engage in banking may be restrained by the sovereign authority, and may be regulated by legislation, and it must be commenced and carried on in strict accordance with such statutes as have been enacted for its regulation. (*Nance v. Hemphill,* 1 Ala. 551; *Attorney General* v. *Utica Ins. Co.* 2 Johns. Ch. 377; *Curtis* v. *Leavitt,* 15 N. Y. 52; *People* v. *Bartow,* 6 Cow. 290.) In *Bank of Augusta* v. *Earle,* 13 Pet. 519, it was said by Chief Justice TANEY in delivering the opinion of the Supreme Court of the United States: "And it is very clear that at common law the right of banking, in all of its ramifications, belonged to the individual citizens, and might be exercised by them at their pleasure. Undoubtedly, the sovereign authority may regulate and restrain this right; but the constitution of Alabama purports to be nothing more than a restriction upon the power of the legislature in relation to banking corporations, and does not appear to have been intended as a restriction upon the rights of individuals. That part of the subject appears to have been left, as is usually done, for the action of the legislature, to be modified according to circumstances."

All persons possess their rights, whether to things tangible or intangible, subject to the general police power of the State. (*Northwestern Fertilizing Co.* v. *Village of Hyde Park,* 70 Ill. 634.) The police power is that inherent and

plenary power which enables the State to restrain or prohibit all things hurtful to the comfort, safety and welfare of society. (*Town of Lake. View* v. *Rose Hill Cemetery Co.* 70 Ill. 191; *Cole* v. *Hall,* 103 id. 30; *Harmon* v. *City of Chicago,* 110 id. 400; *Dunne* v. *People,* 94 id. 120.) In Cooley's Constitutional Limitations, (6th ed. 704,) in discussing the police power of the States, it is said: "The police power of a State, in a comprehensive sense, embraces its system of internal regulation, by which it is sought not only to preserve the public order and to prevent offenses against the State, but also to establish, for the intercourse of citizen with citizen, those rules of good manners and good neighborhood which are calculated to prevent a conflict of rights, and to insure to each the uninterrupted enjoyment of his own, so far as is reasonably consistent with a like enjoyment of rights by others."

A banker is a dealer in capital,—an intermediate party between the borrower and the lender,—who borrows of one party and lends to another; and the business of banking is, among other things, the establishing of a common fund for lending money. (Newmark on Bank Deposits, sec. 21.) And, as said by the Supreme Court of Wisconsin in *Baker* v. *State,* 54 Wis. 368, a bank implies capital, and capital invites confidence. A man holding himself out as a banker thereby gives public proclamation that he has money, and property readily convertible into money, in his possession and subject to his control, and for that reason he may be safely trusted, and his business not only affects himself as a banker, but every person who deals with him as such. The object of the statute that is here challenged was evidently to protect the public from being induced to deposit money with insolvent bankers, and there is manifest reason and necessity for protecting the community in their dealings with persons engaged in the banking business that do not exist in respect to their transactions with those employed in

the ordinary agricultural, manufacturing, merchandising and mining pursuits.

It is urged that proof that the accused is a banker or person doing a banking business, that he received a deposit from a person not indebted to him and at a time when he was insolvent, whereby the deposit is lost to the depositor, is not, in and of itself, and without evidence from which the jury can infer a criminal intent, sufficient to convict of a crime. And in that connection our attention is again called to the same constitutional provision already partially considered, that no person shall be deprived of life, liberty or property without due process of law, and also to the further provision of the constitution that the right of trial by jury, as heretofore enjoyed, shall remain inviolate, and, in connection therewith, to the fact that among the maxims of the common law which these constitutional provisions secure to the citizen are these: that every man is presumed innocent until proven guilty, and that the burden is upon the State to overcome that presumption of innocence by a preponderance of the evidence;—and the claim is made, that in that the statute provides that the failure, suspension or involuntary liquidation of the banker, within thirty days from and after the time of receiving the deposit, shall be *prima facie* evidence of an intent to defraud on the part of the banker, such statute is in derogation of these rights so secured, and therefore unconstitutional and void.

The law always presumes an accused party innocent until he is proved to be guilty,—and this is a presumption which attends all the proceedings against him, from their initiation until they result in a verdict, which either finds the party guilty or converts the presumption of innocence into an adjudged fact. (Cooley's Const. Lim. *309.) But no one has a vested right in the rules of evidence, and in legal contemplation they are not regarded as being of the essence of any right with which a party is invested. They pertain to the remedy, and are sub-

ject to modification and control by the legislature.   (See Idem. *367.)

In *Board of Commissioners* v. *Merchant*, 103 N. Y. 143, it is said : "The general power of the legislature to prescribe rules of evidence and methods of proof is undoubted. While the power has its constitutional limitations, it is not easy to define precisely what they are.   A law which would practically shut out the evidence of a party, and thus deny him the opportunity for trial, would substantially deprive him of due process of law.   It would not be possible to uphold a law which made an act *prima facie* evidence of crime which had no relation to a criminal act, and no tendency whatever, by itself, to prove a criminal act.   But so long as the legislature, in prescribing rules of evidence, in either civil or criminal cases, leaves a party a fair opportunity to make his defense, and to submit all the facts to the jury to be weighed by them, upon evidence legitimately bearing upon them, it is difficult to perceive how its acts can be assailed upon constitutional grounds."   And in the later case of *People* v. *Cannon*, 139 N. Y. 32, the same court held that the State legislature has power to enact that even in criminal actions, where certain facts have been proved, they shall be *prima facie* evidence of the main fact in question, but that the fact upon which the presumption is to rest must have some fair relation to or natural connection with the main fact, and that the inference of the existence of the main fact because of the existence of the fact proved must not be purely arbitrary, unreasonable, unnatural or extraordinary, and the accused must have a fair chance to make his defense and to submit the whole case to a jury.   In *State* v. *Buck*, 120 Mo. 479, it was held, after a full review of the authorities, that a section of the statute of that State which makes it a criminal offense for an officer of a bank to receive a deposit knowing the bank to be insolvent, and providing that subsequent failure of the bank shall be *prima facie* evidence of such knowledge, is not vio-

lative of a constitutional provision that "the right of trial by jury, as heretofore enjoyed, shall remain inviolate."

Plaintiffs in error call attention to *Berwick* v. *People*, 13 R. I. 211, and other cases, which apparently announce a rule somewhat in conflict with that held in the authorities we have cited. They seem, however, to be against the weight of authority. At all events, this court is committed to the doctrine as held in New York, Missouri and other States, that the legislature may provide that a designated fact or facts shall be *prima facie* evidence of a certain other fact, but subject to the restrictions stated in the authorities to which reference has been made. In *Chicago, Burlington and Quincy Railroad Co.* v. *Jones*, 149 Ill. 361, we said (p. 382): "It is argued that the provision of the statute making the schedule of the commissioners *prima facie* evidence that the rates therein fixed are reasonable maximum rates of charges, is unconstitutional and void, not only as depriving the carriers of their property without due process of law, but as infringing upon the right of trial by jury. We do not think that this objection should be sustained. In the first place, the act does not deprive the railroad corporations of the right to have a judicial determination of the reasonableness of the rates, if they are not satisfied with the schedule made by the commission. The courts are open to them for a review of the acts of the commissioners in fixing the rates of charges. In the next place, the provision is an exercise by the legislature of its undoubted power to prescribe the rules of evidence. (2 Rice on Evidence, pp. 806, 807; *Commonwealth* v. *Williams*, 6 Gray, 1; *State* v. *Harley*, 54 Me. 562.) Such provisions are not unusual. Cases have arisen in this State under a statute making the fact of injury, caused by sparks from a locomotive passing along the road, *prima facie* evidence of negligence, and no question has ever been raised as to the validity of the statute. * * * Acts making tax deeds *prima facie* evidence of the regularity of proceedings antecedent to the deed

have been held to be valid.   2 Rice on Evidence, p. 607;
*Hand* v. *Ballou*, 12 N. Y. 541; *Delaplaine* v. *Cook*, 7 Wis. 54;
*Allen* v. *Armstrong*, 16 Iowa, 508; *Wright* v. *Dunham*, 13
Mich. 414; *Gage* v. *Caraher*, 125 Ill. 447." See, also, *Chicago
and Alton Railroad Co.* v. *People ex rel.* 67 Ill. 11.   And in
*American Trust and Savings Bank* v. *Gueder & Paeschke Manf.
Co.* 150 Ill. 336, where the same statute now in question
was under consideration, it was held that in cases where
said statute applies, the receipt of the deposit is *prima
facie* proof of fraudulent intent, and that the rule of evi-
dence established by the statute applies both to criminal
prosecutions and civil proceedings, and wherever acts
done in contravention of the provisions of the statute are
the subject of judicial investigation.

If one is a banker or person doing a banking business,
and receives on deposit the money of his customer, it is
to be presumed that he knows, at the time of receiving
such deposit, whether or not he is solvent.   At all events,
as he holds himself out to the public and to his customers
as being possessed of money and capital, and therefore
to be safely trusted, it is his duty to know, and he is, under
all ordinary circumstances, bound to know, that he is
solvent, and it is criminal negligence for him not to know
of his own insolvency.   The Criminal Code (par. 280) de-
clares that a criminal offense consists in a violation of a
public law, in the commission of which there shall be a
union or joint operation of act and intention, or criminal
negligence.   In cases of the failure, suspension or invol-
untary liquidation of a banker within thirty days after
he has received a deposit from his customer, it cannot
fairly be said that the fact of such failure, suspension or
involuntary liquidation does not tend to show that he
was insolvent when he received the deposit, and since, if
he was then insolvent, he is presumed to have known of
such insolvency at that time, and it is criminal negli-
gence, under all ordinary circumstances, for him not then
to have known of it, the inference that when he received

such deposit it was with a fraudulent intent on his part is not so purely arbitrary, unreasonable, unnatural or extraordinary as would justify the courts in saying that such a failure within thirty days had no fair relation to or connection with the existence of a fraudulent intent at the time of the deposit, and that therefore the act of the legislature is unconstitutional, null and void. The words of the statute, "*prima facie* evidence," *ex vi termini* imply that the fraudulent intent may be rebutted by any competent testimony. It is only in a very clear case that the courts will assume to declare the invalidity of a statute enacted by the legislature, and no clear and palpable case of invalidity here appears.

It is assigned as error that the court denied the motion to quash the indictment. The indictment is substantially as follows: That Charles J. Meadowcroft and Frank R. Meadowcroft, on the third day of June, 1893, in said county of Cook, in the State of Illinois, then and there being persons then and there doing a banking business under the name of Meadowcroft Brothers, corruptly, willfully, fraudulently and feloniously did receive from one John D. Collins one hundred current United States of America treasury notes, etc., of the value of, etc., of the personal goods, money and property of the said John D. Collins, the said John D. Collins then and there not being indebted to the said Charles J. Meadowcroft and Frank R. Meadowcroft when, at the time of receiving the said money and deposit, to-wit, on the said third day of June, etc., said Charles J. Meadowcroft and said Frank R. Meadowcroft, said persons then and there doing a banking business as aforesaid, were then and there insolvent, whereby and because of which insolvency the said money deposit so then and there made as aforesaid was then and there lost to him, said John D. Collins, whereby and by force of the statute in such case made and provided, etc.

It is urged that the statute is penal, and must therefore be strictly construed. But the rule of strict con-

struction does not prevent our calling in the aid of other rules and giving to each its appropriate scope, the ascertainment of the legislative will being the primary consideration, after all. (Bishop on Stat. Crimes, sec. 200.) A strict construction is not violated by giving the words of a statute a reasonable meaning, according to the sense in which they were intended, and disregarding captious objections, and even the demands of an exact grammatical propriety. (Idem, sec. 212.) And a statute which is made for the good of the public, ought, although it be penal, to receive an equitable construction. 6 Bacon's Abr. 391; *People* v. *Bartow*, 6 Cow. 290.

It is claimed that the indictment is defective in not containing a specific averment of an intent, at the time of receiving the money, to defraud John D. Collins. The indictment states the offense in the terms and language of the statute creating the offense, and is therefore to be deemed sufficiently technical and correct. Such is the legislative mandate, (Crim. Code, par. 408,) and very numerous decisions of this court have given effect to it. And, in addition thereto, it charges that the act was corruptly, willfully, fraudulently and feloniously done. It is to be noted that the offense is created and defined in the first part of the section, and that the office of the last sentence of the section—to the effect that the failure, suspension or involuntary liquidation of the banker within thirty days from and after the time of receiving the deposit shall be *prima facie* evidence of an intent to defraud on the part of such banker—is merely to establish a rule of evidence that shall be applicable in trials for the offense that had already been created and defined. It may be granted that it is a legislative recognition of the fact that in the commission of the offense created there must be a criminal intent, or that negligence which is its equivalent; but such recognition is nothing more than the recognition of the principle of the common law, which, as we have already seen, is also embodied and

declared in the Criminal Code in the words that in the commission of a criminal offense there must be a union or joint operation of act and intention, or criminal negligence. The act upon which the indictment is based does not require that there should be either an averment or proof of a specific intent to defraud John D. Collins. Under our statutory rule it is sufficient to charge the offense in the terms and language used in creating and defining it, and it is only when such terms and language mention the intent as one of the constituent elements of the offense created, that it is necessary to allege the criminal intent. (*McCutcheon* v. *People,* 69 Ill. 601.) The essential element of a criminal intent or criminal negligence is, however, implied, since it is of the essence of every criminal offense, and it must in some way appear in order to justify a conviction. A statute makes an act a crime, and either provides that proof of a specific fact or facts shall be *prima facie* evidence of evil intent, or else the law infers the evil intent from the act itself. But if it appears, upon the whole case, that the thing done is not within the intention of the law, then it is not within the law though within its letter.

It is claimed that the indictment is defective in not specifically and in express terms averring that the defendants received the money of the prosecuting witness *as* bankers and *as* a general bank deposit. The indictment does allege that the defendants, "being persons then and there doing a banking business under the name of Meadowcroft Bros.," "did receive from one John D. Collins" certain specified moneys of certain specified values, "of the personal goods, money and property of the said John D. Collins, the said John D. Collins then and there not being indebted to" the said defendants. The charge is in the terms and language of the statute, and, tested by the statutory rule, is to be deemed sufficiently technical and correct. If the defendants, while doing a banking business, received a deposit, the reasonable and

natural conclusion is that they received the deposit in their capacity of bankers, and the rule is that a deposit is general unless the depositor makes it special, or deposits it expressly in some particular capacity. *Ward* v. *Johnson*, 95 Ill. 215; *Brahm* v. *Adkins*, 77 id. 263.

It is urged that the indictment is defective because it does not charge that the partnership of Meadowcroft Bros., as a partnership, was insolvent on June 3, 1893, or at any other time. The claim, in substance, is, that since the indictment simply charges that Charles J. Meadowcroft and Frank R. Meadowcroft, persons doing a banking business under the name of Meadowcroft Bros., were then and there insolvent, *non constat* that the partnership of Meadowcroft Bros. was then and there insolvent, and that therefore the facts alleged, if conceded to be true, do not constitute a crime. This claim is based upon the theory that a partnership is a legal entity, distinct from and independent of the persons composing it. Whatever may be the law of other States, such is not the law of this State. Most of the cases relied on to establish the proposition seem to have been decided in States that have either adopted a code, or have abolished the distinction between legal and equitable rights and remedies, or have enacted statutes giving to co-partnerships a *quasi* personal existence. In this State the rule which requires the assets of a firm to be first applied to the payment of firm debts, and the individual assets of the several partners to be first applied to the payment of the individual debts of the several partners, is not a rule that is recognized or enforced in a court of law, but a rule of equity that is enforcible only in courts exercising equitable jurisdiction, and is not founded on the equities of the creditors, but is worked out only through the medium of the equities of the partners. (See *Hanford* v. *Prouty*, 133 Ill. 339, and numerous other cases.) At law, the individual debts and the partnership debts are placed upon

the same footing, and are to be paid *pari passu* out of the assets. *Ladd* v. *Griswold*, 4 Gilm. 25, and subsequent cases.

The statute under consideration provides "that if any banker or broker, or person or persons doing a banking business, or any officer of any banking company or incorporated bank," shall receive a deposit, etc. It does not mention or say anything about a firm or co-partnership. The indictment follows the statute, and alleges "that Charles J. Meadowcroft and Frank R. Meadowcroft, then and there being persons then and there doing a banking business under the name of Meadowcroft Bros.," received a deposit. If Charles J. Meadowcroft and Frank R. Meadowcroft were persons doing a banking business, and were insolvent, and received a deposit under the circumstances denounced by the statute, it would seem they must be guilty of the offense prohibited by that statute. The fact that they did their banking business under the name of "Meadowcroft Bros.," did not make that mere name a legal entity and endow it with a personal existence distinct from and independent of themselves. In fact, "Meadowcroft Bros." was simply the firm name or trade name in which Charles J. Meadowcroft and Frank R. Meadowcroft did the banking business of Charles J. Meadowcroft and Frank R. Meadowcroft, and if they were solvent then "Meadowcroft Bros." was solvent, and if they were insolvent then "Meadowcroft Bros." was insolvent, for there was no such a person, either natural or artificial, in existence as "Meadowcroft Bros." distinguishable from Charles J. Meadowcroft and Frank R. Meadowcroft. There was, therefore, no necessity for averring in the indictment the insolvency of Meadowcroft Bros.

Our conclusion is that there was no error in overruling the motion to quash the indictment.

It is assigned as error that the court denied the motion of the defendants, made at the November term, 1894, to be set at liberty for want of prosecution. It appears

that they were indicted at the April term, 1894, of the Criminal Court of Cook county; that the defendant Frank R. Meadowcroft gave bail on May 5, 1894, it being one of the days of the said April term, and that the defendant Charles J. Meadowcroft gave bail on May 7, 1894, it being the first day of the May term, 1894. It also appears that the June, July, August, September and October terms, 1894, of said court were held after the return of the indictment and the giving of bail, and prior to the entry of said motion at said November term to be set at liberty.

In *Gallagher* v. *People*, 88 Ill. 335, the question arose as to the construction to be placed upon the latter part of section 18 of division 13 of the Criminal Code, which reads as follows: "If any such prisoner shall have been admitted to bail for a crime other than a capital offense, the court may continue the trial of said cause to a third term, if it shall appear, by oath or affirmation, that the witnesses for the People of the State are absent, such witnesses being mentioned by name and the court shown wherein their testimony is material." The there defendant had been indicted and had entered into recognizance at the May term, 1874, of the court, and the claim made was, that he was entitled to be discharged at the third term after bail was given, and was not required to appear at the September term, 1876. It was held, that since he was out on bail he was not entitled to be discharged at the third term after bail was given, because it was not shown that the various continuances were had on the application of the People, or that the accused was present, ready for or demanding a trial; and it was there said that the statute "only authorized the accused, who is under bail, to demand a trial, and if not granted at the third term, to be discharged from bail and prosecution under the indictment then pending." In the case at bar it appears from the affidavit of the defendant Frank R. Meadowcroft, submitted on the motion to be set at liberty, that he appeared and gave bail on the fifth day of

May, 1894, and further, "that neither he nor his counsel, nor any one in his behalf, has appeared in court, for any purpose whatsoever, since the said fifth day of May, A. D. 1894;" and it appears from the affidavit of the defendant Charles J. Meadowcroft, presented at the hearing of said motion, that he appeared and gave bail on the seventh day of May, 1894, and "that neither he nor his counsel, nor any one in his behalf, has appeared in court, for any purpose whatsoever, since the said seventh day of May, A. D. 1894." If the defendants were out on bail and never appeared in court until the November term, then, as matter of course, they were not put upon trial until that term. Even if we should assume that it was legally possible for the prosecution to try the case in their absence from court, yet it is very clear that the prosecution was not bound so to do. The defendants were fortunate in that judgments of forfeiture were not taken upon their bail bonds, if so be it that they were not declared forfeited. There was no error in denying the motions for discharges.

A multitude of questions are raised in this case by the fifty-four elaborate assignments of error upon the record and in the almost three hundred printed pages of brief and argument filed by the plaintiffs in error, and an analysis of the statute upon which the indictment is based will facilitate the consideration of these questions. The substance of the section, expurgating all words that are not essential to the present inquiry, is this: If any banker, or person or persons doing a banking business, shall receive from any person or persons not indebted to said banker any money, when, at the time of receiving such deposit, said banker is insolvent, whereby the deposit so made shall be lost to the depositor, said banker so receiving said deposit shall be deemed guilty of embezzlement, and upon conviction thereof shall be fined in a sum double the amount of the sum so embezzled and fraudulently taken, and in addition thereto, etc.

Waiving the question of evil intent, what elements enter into the commission of the crime created by this section of the statute? Plainly these: the defendants must be bankers, or persons doing a banking business; they must receive money on deposit; they must be insolvent at the time of receiving such money on deposit, and the money so received on deposit must be lost by reason of such insolvency. The natures of the first three of these elements are easy enough of comprehension. In respect to the last there is more difficulty. The words of the statute are, "whereby the deposit so made shall be lost to the depositor." When lost? At the time that the deposit is received by the insolvent bankers? Or when, by the failure, suspension or involuntary liquidation of the bankers, by reason of insolvency, the depositor is deprived of the use and benefit of his deposit? Or is it when, upon final settlement of the insolvent estate, the exact amount that will not be repaid by the dividends declared is definitely ascertained? Or is it after the death of the bankers and the final settlements of the testate or intestate estates left by them, and when, for the first time, it can be known just how much, if any, of the deposit is so absolutely lost to the depositor as that it will never be returned to him?

The statute provides that if any bankers shall receive any money when, at the time of receiving such deposit, said bankers are insolvent, "whereby the deposit so made shall be lost to the depositor," said bankers "so receiving said deposit shall be deemed guilty of embezzlement," and upon conviction thereof shall be fined "in a sum double the amount of the sum so embezzled and fraudulently taken." The expressions, "the deposit so made" and "so receiving said deposit," if literally and rigidly construed, would seem to imply the whole amount of the deposit; and the expression, "the amount of the sum * * * fraudulently taken," if alone considered, would seem to point to the time when the deposit is first received. Upon our first examination of the statute we

were inclined to the conclusion that the crime denounced therein was complete at the time of receiving the deposit, provided the bankers were then insolvent, and that the sum of money deposited and "fraudulently taken" would in all cases be the amount that, within the contemplation of the statute, was "lost to the depositor," but upon further consideration we are satisfied of the impropriety of such conclusion.

As we have already seen, one of the essential elements of the statutory offense is that the deposit "shall be lost to the depositor." The word "shall" is in the future tense, and is indicative of a future event. Although the bankers are insolvent and receive a deposit while so insolvent, yet it does not necessarily result that either the whole or any portion of the sum deposited is either lost to the depositor or embezzled by the bankers. It may well be that the sum so deposited is, in view of the existing insolvency of the bankers, "fraudulently taken" by them, but such fraudulent taking does not, in and of itself, constitute the offense. It is only when "the deposit so made shall be lost to the depositor" that the bankers "shall be deemed guilty of embezzlement," and the fine is to be a sum that is "double the amount of the sum *so embezzled and fraudulently taken.*" If the entire amount of the deposit is paid back to the depositor or paid out upon his checks prior to failure, suspension or involuntary liquidation of the bankers, it is plain that no money of the depositor has been either lost to such depositor or embezzled by the bankers; and it is equally plain that if a part of it is checked out and paid before such failure, suspension or involuntary liquidation, then the amount so paid is neither lost nor embezzled.

When a deposit of money is made, the bankers, in contemplation of law, have money on hand to the full amount of the sum deposited, ready to deliver when called for, and their contract with the depositor is to refund that same amount on demand. When a deposit is received by

bankers, they at the time being insolvent, and it, or any part of it, is not paid back on demand, as contemplated by the agreement between them and the depositor,—and this because of the insolvency of such bankers and their consequent inability to repay,—and the bankers fail, suspend or go into involuntary liquidation, then, within the true intent and meaning of this statute, which is entitled "An act for the protection of bank depositors," such sum, or such part of it as has not been so paid back, is "lost to the depositor," and in contemplation of law "embezzled" by the bankers. It is true that the language of the statute is, "whereby *the deposit* so made shall be lost," and that those words give some color to the claim that the loss of the whole amount of the deposit is implied by the statute. We are, however, unable to concur in the suggestion of counsel that the crime is not complete without the loss of the entire deposit. The statute must receive a reasonable construction. The statute uses the words "shall receive   *   *   *   any money" as well as the words "such deposit" and "the deposit," and these latter expressions are broad enough to include, and do include, not only the total sum deposited, but also the constituent parts of such sum. The whole of a thing necessarily includes all of its parts, and it will not be imputed to the legislature that it entertained any such absurd intention as that if there was a fraudulent receipt by an insolvent banker of a deposit of $100 and the entire $100 was lost to the depositor it would be embezzlement, whereas if $5 of the $100 deposited was paid out on the depositor's check and the $95 lost there would be no embezzlement. It would seem, however, that this particular matter is of but little importance in the case at bar, for the evidence is that plaintiffs in error failed and closed their doors without having repaid to Collins, the prosecuting witness, any part of the $200 deposited by him.

The crime created by the statute is consummated when the insolvent bankers fraudulently receive the deposit,

and by their failure, suspension or involuntary liquidation, by reason of insolvency, the depositor is deprived of the benefit of his deposit, or such portion of it as has not already been paid back to him or upon his checks. The depositor is then—at that time—deprived of his contract right to have the money refunded upon demand or paid out upon checks drawn by him, and being deprived of this right the deposit, within the purview of the statute, is then "lost to the depositor." This meaning placed upon the word "lost" is not unauthorized, for the rule is, that in construing a statute the court is not restricted to the primary meaning of a word used, where, from a consideration of the whole and every part of the statute, it is plain that the word is used in a different sense. *City of Springfield* v. *Green*, 120 Ill. 269.

The view we have taken carries into effect the legislative intention, and gives force and vitality to a wholesome statute. On the other hand, to construe the statute as meaning that there can be no conviction until it can be clearly and definitely ascertained what the exact amount is that can never be recovered and is permanently and absolutely lost, would utterly defeat the object of the statute. It would seem that such amount can never be so ascertained until after the death of the banker and the final settlement of his estate by his administrator. And even if it should be held that what the statute contemplates is the ascertainment of the amount of the deficit after the distribution of the proceeds of the property that the banker owned at the time of his suspension of business, yet it can readily be seen that usually, in fact almost always, many years would pass before final settlement of that estate would be made, and in the meantime the Statute of Limitations would frequently bar any prosecution for the offense committed. And it is to be borne in mind it is important the exact amount of the deposit lost to the depositor shall be definitely ascertained, for the statute expressly provides that the fine

imposed in case of conviction shall be a sum double the amount of the sum so embezzled and fraudulently taken.

There is authority, as well as reason, to sustain the conclusions we have reached in regard to the meaning of this statute.    In *Queenan* v. *Palmer*, 117 Ill. 619, the words of the statute were, "make good all losses to depositors or others." This court there said (p. 629): "What is meant by the term 'losses,' as used in the statute? It would seem, from the argument, that defendants would restrict the meaning of the term 'losses' to signify only the difference between the depositor's claim and what he might realize by an action or bill against the insolvent bank. * * * It cannot be that the term 'losses' was used, in this connection, in that restricted sense as to mean that which can never be recovered, otherwise there might be no such thing as any 'losses' to the depositors in this case, for there might exist a remedy against the bank for one portion and against the stockholders for the residue, and what would there be left for the term to attach? Obviously, the term 'losses,' was used in a more general sense, and one usually attached to it by common understanding. In its most general sense the word 'loss' means any deprivation. In some instances it may mean that which can never be recovered, and in others that which is simply withheld or that of which a party is dispossessed. Often the context assists to a clearer understanding of the words employed in a statute or written agreement. By another section this corporation was authorized to receive deposits from laborers and servants, and was obligated to repay such deposits when required. The suspension of the bank, by reason of insolvency, was an absolute refusal to repay the deposits to the owners, and operated as a deprivation,—a withholding of the same from the depositors,—and that is a loss, in the ordinary acceptation of that word. A portion of the value of such deposits, or all, might ultimately be recovered from either the bank or stockholder, but the deposits are lost.

163—6

to the owner.    After the suspension of the bank nothing remained of his deposits but the obligation of the bank or the stockholders to pay the value.  That obligation might, or might not, be of value to him, depending on the fact of the solvency or insolvency of both the corporation and the stockholders.    At all events, the funds have been wasted by the corporation becoming partially or totally insolvent, and that is a loss to the depositor in the sense that term is used in the statute, and his right to proceed against the stockholders arises at once.    Any other defi- nition of this word 'losses' would be inconsistent with the context, and would afford no adequate security to the depositors or others dealing with the bank."

It is claimed that the State failed to make out a case at the trial, because it did not show that the deposit made on June 3, 1893, by Collins, was a general deposit, as distinguished from a special or specific deposit.  That fact is amply shown by the testimony of Collins and his bank book, which was introduced in evidence.    Besides this, a deposit of money with bankers at their banking house is regarded as general, unless it appears that the depositor makes it special or deposits it expressly in some particular capacity.    *Brahm* v. *Adkins,* 77 Ill. 263.

A like failure to make out a case is claimed because it is not shown that Collins ever made a demand for the return of his deposit and that defendants refused to com- ply with such demand.    It appears from the evidence that Collins deposited the $200 on Saturday, June 3, 1893, and that when he returned to the bank on Monday, June 5, he found the door closed and a card of the receiver of Meadowcroft Bros. tacked thereon and the bank not open. or doing business, and also that the defendants were insolvent, and have never resumed business.    When a bank or banker suspends payment and closes the doors against depositors and creditors, and discontinues bank- ing operations, it or he waives the necessity for a demand on the part of its or his depositors.    (*Watson* v. *Phœnix*

*Bank,* 8 Metc. 217; *Planter's Bank* v. *F. & M. Bank,* 8 Gill & J. 449.) And in the late case of *Davis* v. *Industrial Manf. Co.* 19 S. E. Rep. 371, it was held by the Supreme Court of North Carolina that where a bank closes its doors and commits an act of insolvency its deposits become imme- diately due, without demand or notice. The case of *Wright* v. *People,* 61 Ill. 382, is not here in point, for there the failure to deliver on the demand of the consignor was, by the express terms of the statute there involved, made a constituent element in the offense that was created.

At the conclusion of the evidence for the State the defendants called Collins to the stand, and after he had testified that he had never made any demand upon the defendants, or either of them, for the return of the de- posit, counsel for the defendants then and there, on behalf of the defendants, tendered to Collins the full amount of the deposit, with interest thereon. Collins declined the tender, whereupon the money was deposited with the clerk of the court, subject to his order. It is claimed by counsel, that if it appears, even after indict- ment and at any stage of the proceedings thereon, that the depositor has recovered or will recover his deposit in full, and will sustain no absolute and ultimate loss, then the prosecution must fail, even though the banker, on the day of receiving the deposit, was hopelessly insolvent. This claim is based on the clause of the statute which says, "whereby the deposit so made shall be lost to the depositor." We have already placed a construction upon that clause, and it will readily be conceded that if we are right in the construction we have given it then the con- tention now under consideration cannot be sustained. It needs no citation of authorities to show that, as a matter of law, the restitution of money that has been either stolen or embezzled, or a tender or offer to return the same or its equivalent to the party from whom it was stolen or embezzled, does not bar a prosecution by indict- ment and conviction for such larceny or embezzlement.

The effect of the tender and payment into court may be a discharge from the indebtedness for the deposit fraudulently received, so far as the depositor and his civil remedies are concerned; but the crime having been fully consummated before indictment found, it is not within the power of the banker and the depositor, or either of them, to compromise or take away the right of the State to insist upon a conviction for the crime committed. It is not to be presumed that in creating the offense and providing for its punishment it was the intention of the legislature to make the criminal courts of the State collecting agencies for collecting the debts due to depositors from insolvent banks and bankers.

The view we have taken of the statute eliminates from consideration most, if not all, of the objections that are urged by plaintiffs in error to the rulings of the trial court on questions relating to the admissibility of testimony and upon the instructions. It is manifest that in these rulings the trial court held the law more strongly in favor of the plaintiffs in error and against the prosecution than was warranted by the statute. The State assumed at the trial a much greater burden of proof than the law imposed upon it. The result was, that the rulings upon matters of evidence and upon instructions were more favorable to plaintiffs in error than they were entitled to, and they have no just ground for complaint in that regard. Even if it be conceded that some technical errors were committed pending the struggles of the State under the unwarranted burdens that at the trial were imposed upon it, yet they were immaterial so far as the real merits of the case were concerned, and plaintiffs in error were not damnified by them.

The evidence abundantly sustains the verdict of the jury. The testimony is exceedingly voluminous, owing to the matters already suggested. We refrain from any discussion of the facts of the case, as no useful purpose would be accomplished thereby.

It is urged that there are two obvious objections to the verdict that was returned by the jury that tried the case, either of which, under the law, is fatal to the validity of the verdict and of the judgment of the court.  The verdict was as follows:  "We, the jury, find the defendants, Frank R. Meadowcroft and Charles J. Meadowcroft, guilty of embezzlement in manner and form as charged in the indictment, and we fix the punishment of the said Frank R. Meadowcroft and Charles J. Meadowcroft at a fine in the sum of twenty-eight dollars ($28), and in addition thereto at imprisonment in the penitentiary for the term of one year."

The first of the objections made is, that the jury did not find, in their verdict, the sum of money or value of the deposit embezzled; that the punishment that by the mandate of the statute must be imposed is the fine, the imprisonment being optional with the jury, and that this fine must be fixed by the jury at a sum that is double the amount of the sum that is embezzled.  The claim is, that it is clearly settled in this State that wherever the punishment depends upon the value of the article stolen or embezzled, the jury must affirmatively and expressly find that value, and a general verdict is bad and will not support a conviction.  The cases of *Highland* v. *People*, 1 Scam. 392, *Sawyer* v. *People*, 3 Gilm. 53, *Hildreth* v. *People*, 32 Ill. 36, *Collins* v. *People*, 39 id. 233, *Williams* v. *People*, 44 id. 478, *Tobin* v. *People*, 104 id. 565, and *Thompson* v. *People*, 125 id. 256, are relied on as sustaining this doctrine.  The claim, as urged, is too broad.  The rules of the common law do not require that the jury should, in terms, find the value of the property charged to have been stolen or embezzled.  It is only by force of our statutes, and in cases where the character of the offense and the mode of punishment depend upon the value of property, that the value of such property is required to be found in the verdict.  In *Sawyer* v. *People*, *supra*, it is said, that where the value of the property determines the *character* of the

offense and regulates the *mode* of punishment, it is necessary for the jury to ascertain the value and state it in their verdict, that the court may know with certainty whether the accused should be subjected to punishment by confinement in the penitentiary, or by the payment of a fine and imprisonment in the county jail. Like language is used in *Highland* v. *People, supra,* and the other cases relied on are expressly decided upon the authority of the *Highland case* and the *Sawyer case.* Here, neither the *character* of the offense nor the *mode* of the punishment is contingent upon the value of the deposit embezzled by the banker. Upon conviction the fine is to be imposed at all events, and whether the value of the property embezzled is $1.00 or $400, and the optional punishment of imprisonment in the penitentiary may lawfully be inflicted when the value of the property is a single dollar and omitted when its value is hundreds or even thousands of dollars. The most that can be said is, that the amount of the fine depends upon the value; but that goes only to the measure or quantity of punishment, and not to the character of the offense or the mode of punishment. We are not inclined to extend the doctrine relied on beyond the requirements of the rule and apply it to cases not within the reason of the rule. Here the fine fixed by the jury was only $28, and, as we have already seen, it should, under the evidence and the law, have been $400. Plaintiffs in error are not injured and cannot be heard to complain.

The other objection to the verdict is, that it fixed a joint instead of a several punishment for the two defendants. In *Moody* v. *People,* 20 Ill. 316, this court said, "where several persons are jointly indicted and convicted they should be sentenced severally, and the imposition of a joint fine is erroneous." If each defendant was guilty of the crime charged, then each incurred the penalty or penalties provided by the statute, and the jury should have fixed the punishment of each. The verdict in this case is

very informal, but is it to be regarded as invalid ? It is to be kept in mind that juries are usually composed of men who are not learned in the forms of the law or exact in their use of language, and therefore all reasonable intendments should be made in order to sustain their verdicts when the validity of such verdicts is challenged on merely technical grounds. If the verdict was, simply, "We fix the punishment of the said Frank R. Meadowcroft and Charles J. Meadowcroft at imprisonment in the penitentiary for the term of one year," then, growing out of the nature of the punishment, the verdict, though informal, would without doubt be regarded as a sufficiently distinct fixing of punishment at imprisonment for one year as against each defendant. It would not, in such case, reasonably or without leading to absurdities be regarded as the fixing of a single term of one year for the two defendants jointly, the further punishment of each to be discharged upon his suffering imprisonment for six months of the term. This being so, and the "imprisonment in the penitentiary for the term of one year" being fixed as a part of "the punishment of the said Frank R. Meadowcroft and Charles J. Meadowcroft," and in immediate conjunction therewith and connected with it by the clause "and in addition thereto," the jury fixing the other part of the punishment "at a fine in the sum of $28," we think there can be no reasonable doubt but that it was the intention of the jury to fix the punishment of each defendant at a fine of $28 as well as at imprisonment in the penitentiary for the term of one year. It is evident that the Criminal Court so regarded and understood and acted upon the verdict, for it sentenced the defendant Frank R. Meadowcroft to imprisonment in the penitentiary for a term of one year and rendered a several judgment against him for a fine of $28, and awarded execution therefor, and also sentenced the defendant Charles J. Meadowcroft to imprisonment in the penitentiary for a term of one year, and rendered a several judgment

against him for a fine of $28 and awarded execution therefor.

We find no error in the record for which the judgment should be reversed, and it is therefore affirmed.

*Judgment affirmed.*

Mr. Justice Phillips, dissenting :

I do not concur in the opinion of the majority. There are two objections to the verdict that was returned by the jury that tried the case, either of which, under the law, is fatal to the validity of the verdict and of the judgment of the court. The verdict was as follows: "We, the jury, find the defendants, Frank R. Meadowcroft and Charles J. Meadowcroft, guilty of embezzlement in manner and form as charged in the indictment, and we fix the punishment of the said Frank R. Meadowcroft and Charles J. Meadowcroft at a fine in the sum of twenty-eight dollars ($28), and in addition thereto at imprisonment in the penitentiary for the term of one year."

The first of the objections made is, that the jury did not find in their verdict the sum of money or value of the deposit embezzled. The statute provides, in express terms, that upon conviction the defendant or defendants "shall be fined in a sum double the amount of the sum so embezzled and fraudulently taken, and in addition thereto may be imprisoned in the State penitentiary not less than one nor more than three years." The punishment that by the mandate of the statute must be imposed, is the fine; the imprisonment is optional with the jury. This fine must be fixed by the jury at a sum that is double the amount of the sum that is embezzled. In this respect the statute is like the provision of the Criminal Code in regard to larceny, wherein the punishment depends upon the value of the property stolen, and like the provision in regard to receiving stolen goods, wherein, also, the punishment depends upon the value of the stolen goods received. It is clearly settled in this State by repeated

and uniform decisions of this court, extending from the year 1837 down to this time, that whenever the measure or kind of punishment depends upon the value of the property stolen, embezzled or received, the jury must find that value as a part of their verdict, and that without such finding the verdict is bad and will not support a conviction. (*Highland* v. *People,* 1 Scam. 392; *Sawyer* v. *People,* 3 Gilm. 53; *Hildreth* v. *People,* 32 Ill. 36; *Collins* v. *People,* 39 id. 233; *Williams* v. *People,* 44 id. 478; *Tobin* v. *People,* 104 id. 565; *Thompson* v. *People,* 125 id. 256.) The reasons for the rule are given in the cases cited, and need not be repeated. I cannot do otherwise than hold the law of the land to be as it has continuously been held to be by the court of last resort for a period of sixty years. And in accord with the rule that obtains in this State are the decisions in other States. *Ray* v. *State,* 1 Green, (Iowa,) 316; *State* v. *Redman,* 17 Iowa, 329; *Miles* v. *State,* 3 Tex. App. 58; *State* v. *Heath,* 41 Tex. 426; *State* v. *Ladd,* 32 N. H. 111.

Another objection to the verdict is, that it fixed a joint instead of a several punishment for the two defendants. That this cannot be done is fully shown by the authorities. *Miller* v. *People,* 47 Ill. App. 472; 1 Bishop on Crim. Law, secs. 954, 955; 1 Bishop on Crim. Proc. (3d ed.) sec. 1036 ; *Allen* v. *State,* 34 Tex. 230 ; *Hampton* v. *State,* 45 id. 154; *Flynn* v. *State,* 8 Tex. App. 398; *State* v. *Gay,* 10 Mo. 440 ; *Strangham* v. *State,* 16 Ark. 37 ; *Cunningham* v. *State,* 26 Tex. App. 83; *Medis* v. *State,* 27 id. 194; *Hayes* v. *State,* 30 id. 452; *Commonwealth* v. *Harris,* 7 Gratt. 600; *Caldwell* v. *Commonwealth,* 7 Dana, 229 ; *Curd* v. *Commonwealth,* 14 B. Mon. 386; *Queen* v. *Littlechild,* L. R. 5 Q. B. 293 ; *Godfrey's case,* 11 Coke, 43; *King* v. *Sterling,* 11 Levinz, 125; *Jones* v. *Commonwealth,* 1 Call, 555 ; *State* v. *Hunter,* 33 Iowa, 361 ; *McLean* v. *State,* 35 Ala. 395 ; *Walsen* v. *State,* 3 Wis. 785 ; *Commonwealth* v. *Ray,* 1 Va. 262. And in *Moody* v. *People,* 20 Ill. 316, this court said: "Where several persons are jointly indicted and convicted they should be sentenced severally, and the imposition of a joint fine is erroneous."

If each defendant was guilty of the crime charged, then each incurred the penalty or penalties provided by the statute, and the jury should have fixed the punishment of each. If the verdict was, simply, "we fix the punishment of the said Frank R. Meadowcroft and Charles J. Meadowcroft at imprisónment in the penitentiary for the term of one year," then, growing out of the nature of the punishment, the verdict, though informal, might be regarded as a sufficiently distinct fixing of punishment as against each defendant. (See *Fife* v. *Commonwealth*, 29 Pa. St. 429.) But when the verdict says, "we fix the punishment of the said Frank R. Meadowcroft and Charles J. Meadowcroft at a fine in the sum of $28," it is manifestly the awarding of a fine of $28 against them jointly, and cannot be regarded otherwise without doing violence to the language used by the jury in their verdict. The language used by them plainly indicates their intention to impose a single fine on the two defendants jointly. And when the Criminal Court afterwards rendered a several judgment against Frank R. Meadowcroft for a fine of $28 and awarded execution therefor, and also rendered a several judgment against Charles J. Meadowcroft for a fine of $28 and awarded execution therefor, it rendered a judgment that was not based upon or authorized by the verdict.

This identical question was before the Supreme Court of Texas in *Allen* v. *State*, 34 Tex, 230, and that court held that the judgment was not warranted or supported by the verdict, the judgment being several while the verdict was joint, and reversed the judgment. In the case at bar the verdict was insufficient to support a valid judgment, and the trial court erred in presuming the intent of the jury to be otherwise than was expressed in the verdict they returned into court, and in entering a several judgment upon a joint verdict.